[No. 23038-4-III.  Division Three.  May 10, 2005.]

DANIEL DICKENS, *Petitioner*, v. ALLIANCE ANALYTICAL LABORATORIES, L.L.C., ET AL., *Petitioners*.

WILLIAM R. RICE ET AL., *Petitioners*, v. ALLIANCE ANALYTICAL LABORATORIES, L.L.C., ET AL., *Petitioners*.[†]

---

[†]Pursuant to a May 6, 2004 superior court order certifying questions to the Court of Appeals for potential discretionary review, the Court of Appeals designated all of the parties "petitioners."

434

*Robert E. Lawrence-Berrey, Jr.*, for petitioners Dickens and Rice.

*Brendan V. Monahan* (of *Velikanje Moore & Shore, P.S.*), for petitioners Alliance Analytical Laboratories, L.L.C., et al.

¶1 BROWN, J. — Following denied cross-motions for summary judgment, the parties received a stipulated order from the trial court certifying four questions for potential discretionary review:

1. What is the definition of an "agent" under RCW 49.52-.050, and what does a plaintiff have to prove in order to hold a defendant personally liable as an agent of an employer?

2. Is it enough that the purported agent have some power and authority to make decisions regarding the payment of wages, or must the purported agent have actually exercised such authority?

3. If actual exercise of authority is not required, what else, if anything must the plaintiff prove?

4. Does the summary judgment record allow either party to prevail as a matter of law on the certified issues?

¶2 Our commissioner granted limited review for issues arising under *Ellerman v. Centerpoint Prepress, Inc.*, 143 Wn.2d 514, 22 P.3d 795 (2001) regarding "whether to be an 'agent' for the purposes of RCW 49.52.070 a defendant need only have certain authority from the employer or whether it is necessary that the defendant also exercise that authority . . . ." Comm'r's Ruling, Aug. 18, 2004. We decline to give advisory opinions. Thus, our analysis is confined to responding to the limited grant of discretionary review in the narrow context of whether the trial court erred in denying the cross-motions for summary judgment on the issue of Gary Lukehart's personal liability. Ordinary agency principles apply. Undeveloped material facts exist. We find no error in denying summary judgment and remand this matter back to the trial court.

## FACTS

¶3 Daniel Dickens and William R. Rice are unpaid employees of Alliance Analytical Laboratories, L.L.C. (AAL). The AAL Limited Liability Company (L.L.C.) is a start-up operation with two members, Anita Cote and RSRT, L.L.C. Gary Lukehart created RSRT "for the sole purpose of acting as a member of AAL." Clerk's Papers (CP) at 188. Mr. Lukehart signed the AAL, L.L.C. agreement as "Manager" for RSRT. CP at 290. In the agreement, Ms. Cote and Mr. Lukehart are named managers of AAL and are referred to individually as "directors" and collectively as the "Board of Directors." CP at 277. After the employees sued AAL, Ms. Cote, RSRT, and Mr. Lukehart individually for their unpaid wages, orders of default were granted as to AAL and Ms. Cote.

¶4 The parties assert no material facts remain and one or the other should have received summary judgment. However, implicit in this stipulated certification is the premise that both parties believe the trial court erred. We summarize the background facts. In 2001, Anna Cote approached Mr. Lukehart about starting a chemical company

in Yakima County. Ms. Cote showed Mr. Lukehart a business plan and told him she was very wealthy. Eventually, Mr. Lukehart became involved and AAL resulted. Mr. Lukehart's personal liability for the aftermath is now before us.

¶5 As noted, AAL was designed to be operated by managers as directors, Ms. Cote (the Cote Director) and Mr. Lukehart (the RSRT, L.L.C. Director). Ms. Cote was the day-to-day operator of AAL. Nancy Flood, in AAL's human resources department, assisted Ms. Cote with bill paying and the books. The extent of Mr. Lukehart's management of AAL is disputed. Mr. Lukehart asserts he merely played the role of a silent investor, but several AAL employees dispute this assertion.

¶6 In 2002, Ms. Cote told Mr. Lukehart insufficient AAL funds existed to cover expenses and payroll. Both Ms. Cote and Mr. Lukehart were signatories on the AAL bank account. RSRT loaned AAL approximately $120,000 over the course of the year in order to cover expenses and payroll. In January 2003, Ms. Cote told Mr. Lukehart insufficient AAL funds existed to cover expenses and payroll. Again, RSRT loaned AAL $50,000 on January 21, 2003, and $25,000 on January 31, 2003, allegedly for the express purpose of covering payroll. In February 2003, this same process was repeated and RSRT loaned $69,000 for the express purpose of paying AAL employees.

¶7 Apparently, Ms. Cote was diverting funds to herself without paying the employees or other AAL creditors. By January 2003, the AAL line of credit was exhausted and AAL checks were bouncing. In February 2003, AAL loan interest payments were overdue. Creditors placed a lien on the AAL bank account. In March 2003, Mr. Lukehart, personally, made interest payments on the AAL loans. Ms. Flood told Mr. Lukehart several times that AAL employees remained unpaid.

¶8 In July 2003, AAL's bank closed its account. Shortly thereafter, AAL realized about $50,000 in income. Ms. Flood unsuccessfully asked Mr. Lukehart to open a new

AAL bank account so that she could put the funds in the bank and use them to cover payroll and expenses. On the advice of his attorney, Mr. Lukehart declined further involvement with AAL. The undeposited money remained at the AAL offices until August 2003, when Ms. Cote individually withdrew the money and opened a new AAL account at another bank.

¶9 Ms. Flood told Mr. Lukehart about the new AAL bank account and he told her that there was nothing he could do about it. Apparently, Ms. Cote took the money from the new AAL bank account for her own use and disappeared.

## ANALYSIS

¶10 The issue is whether, considering *Ellerman v. Centerpoint Prepress, Inc.*, 143 Wn.2d 514, 22 P.3d 795 (2001), the trial court erred in denying the cross-motions for summary judgment on the question of Mr. Lukehart's personal liability as an agent under RCW 49.52.050 for the employees unpaid wages per RCW 49.52.070. The employees contend Mr. Lukehart is an agent of AAL, arguing he is a company employee with exercised, if not actual, authority or control over paying wages. Our review is de novo because the parties have asked us to review a matter of law and the matter touches upon a summary judgment ruling. *Hartley v. State*, 103 Wn.2d 768, 774, 698 P.2d 77 (1985).

¶11 RCW 49.52.050 reflects a strong legislative policy favoring paying wages to employees. *Schilling v. Radio Holdings, Inc.*, 136 Wn.2d 152, 157, 961 P.2d 371 (1998). Often called the "anti-kickback statute," it was enacted to prevent abuses by employers in the labor-management setting. *Cameron v. Neon Sky, Inc.*, 41 Wn. App. 219, 222, 703 P.2d 315 (1985). The law curbs employers and certain employees with positions of financial authority, namely officers, vice principals or other employer agents, from willfully and intentionally depriving employees of wages. RCW 49.52.050(2). Courts liberally construe the anti-kickback statute. *Schilling*, 136 Wn.2d at 159.

■ ¶12 An employer can be found liable under the statute. RCW 49.52.050. Employers include "every person, firm, partnership, corporation, the state of Washington, and all municipal corporations." RCW 49.48.115. Our courts broadly apply liability to persons who could be considered an employer under the statute. *See Schilling*, 136 Wn.2d 152; *see also Ellerman*, 143 Wn.2d 514.

■ ¶13 An L.L.C. manager is entitled to rely in good faith on other managers. RCW 25.15.175. A corporation's fiduciary duty is a duty between corporate directors, the corporation, and its shareholders. John Morey Maurice, *Operational Overview of the Washington Limited Liability Company Act*, 30 GONZ. L. REV. 183, 200 (1995). In an L.L.C., the duty exists between the company, its members, and its managers. *Id.*

■ ¶14 Here, RSRT, L.L.C., as an AAL member-manager-director, is clearly an employer. RSRT, L.L.C. is, however, an artificial entity or person created under chapter 25.15 RCW that must act through its members or managers. Therefore, in order to reach Mr. Lukehart personally, the employees must pierce the corporate veil of RSRT, L.L.C., under RCW 25.15.060, which provides in part:

> Members of a limited liability company shall be personally liable for any act, debt, obligation, or liability of the limited liability company to the extent that shareholders of a Washington business corporation would be liable in analogous circumstances. In this regard, the court may consider the factors and policies set forth in established case law with regard to piercing the corporate veil. . . .

■ ¶15 Piercing the corporate veil is an equitable remedy imposed to rectify an abuse of the corporate privilege. *Truckweld Equip. Co. v. Olson*, 26 Wn. App. 638, 643, 618 P.2d 1017 (1980). In general, a corporation is considered a separate entity, even if it is owned by a single shareholder. *Id.* at 644. To pierce the corporate veil, two separate, essential factors must be established. "First, the corporate form must be intentionally used to violate or evade a duty." *Meisel v. M&N Modern Hydraulic Press Co.*, 97 Wn.2d 403,

410, 645 P.2d 689 (1982). Second, the fact finder must establish that disregarding the corporate veil is necessary and required to prevent an unjustified loss to the injured party. *Id.*

¶16 Although the parties argue no material facts exist, Mr. Lukehart and the employees continue to dispute his AAL management role and his knowledge of payroll matters. Further, they disagree about the inferences to be drawn from his personal infusion of funds into AAL. Information in this record regarding RSRT's corporate picture is sketchy. For example, no certificate of formation, L.L.C. agreement, business minutes, or any other records showing RSRT's authorization to Mr. Lukehart, or lack thereof, is before us. Mr. Lukehart correctly points out RSRT is the member of AAL, not him, personally. The combination of these material disputes and lack of clarity undermine the potential for summary judgment.

¶17 While Mr. Lukehart casts himself as a silent partner and minimizes his director's role in AAL, the AAL limited liability agreement shows his authority to act in wage matters. And, solely a limited partner in a limited partnership is protected as a silent investor. RCW 25.10.190. While Mr. Lukehart's authority to act may have been by omission delegated to Ms. Cote, it is unclear whether director responsibility could be delegated under the AAL, L.L.C. agreement. Further, we view the parties' remaining dispute over alleged willful and intentional actions by Mr. Lukehart or RSRT to be surrounded by material facts precluding summary judgment. In refraining from giving advisory opinions, we express no view regarding Mr. Lukehart's arguments about the impact of the RSRT partnership agreement or the merit of his laches theory. *Walker v. Munro*, 124 Wn.2d 402, 418, 879 P.2d 920 (1994).

¶18 A Washington L.L.C. can have solely one member. RCW 25.15.005(4), (5). Here, RSRT was apparently set up solely by Mr. Lukehart to effectuate a family trust. The employees have not provided authority supporting that this is not a lawful activity. And, a limited liability company can

become a member or manager of another limited liability company. *See* RCW 25.15.005(8), (9); RCW 25.15.115. Thus, the decision to utilize RSRT, rather than Mr. Lukehart personally, as the member and manager of AAL facially appears to be a legitimate business decision.

¶19 We have concluded RSRT is an employer. Presently, the same cannot be said about Mr. Lukehart without fact-finding to resolve RSRT corporate piercing issues. If the corporate veil is pierced, Mr. Lukehart may be determined to be an employer. Thus, we deem it unnecessary and premature to more fully develop the parties' contentions surrounding the four certified questions related to Mr. Lukehart's alleged agency.

¶20 At this point, our need to examine *Ellerman* is limited. In *Ellerman*, Mr. Ellerman, the employee, settled with Rosemary Widener, the employer, before trial. *Ellerman*, 143 Wn.2d at 517. This left solely Betty Handley, Ms. Widener's business manager, as the purported "vice principal" or "agent" who might be liable at trial under RCW 49.52.070. *Ellerman*, 143 Wn.2d at 517-18. Because Mr. Lukehart may be an employer like Ms. Widener if RSRT is pierced, we see no point in reasoning whether liability might attach due to some other status.

¶21 We reiterate for the present that Mr. Lukehart is listed as a manager solely in his representative capacity for RSRT. Generally, an agent is not liable for acts he has taken in his representative capacity. *Yuan v. Chow*, 96 Wn. App. 909, 913-14, 982 P.2d 647 (1999). Ordinary agency definitions and principles apply under RCW 49.52.070. As noted, insufficient facts presently exist under agency principles to support attaching personal liability on Mr. Lukehart as a director of AAL in a summary judgment context.

¶22 Finally, given the limited nature of our commissioner's grant of discretionary review under RAP 2.3(b)(4), we decline to enlarge the analysis beyond this point. Further reasoning is unwarranted. Omitted is analysis of both parties' attempts to argue federal authority concerning

corporate officer responsibility and the alleged commission of willful and intentional acts. First, any detailed analysis of federal authority is unnecessary because it would not materially advance the ultimate termination of this litigation. RAP 2.3(b)(4). Second, we would risk appearing unfair by seeming to advise one party how to proceed at the expense of the other or risk violating our rule against giving purely advisory opinions. Therefore, we narrowly view the commissioner's grant of discretionary review.

## CONCLUSION

¶23 Although we do not know the exact basis for the trial court's denial of summary judgment regarding Mr. Lukehart's personal liability, given our analysis the trial court did not err in denying the cross-motions for summary judgment because in order to reach Mr. Lukehart, the employees must first pierce the RSRT corporate veil. In this limited review, we reason RSRT is an employer, but leave Mr. Lukehart's status open pending fact-finding. Because we do not give advisory opinions, we decline to more fully answer the certified questions. Ordinary agency principles apply to these facts. Unresolved material facts remain to be developed here. Considering the interlocutory nature of this review, we remand this matter back to the trial court.

Schultheis, J., and Allan, J. Pro Tem., concur.

Reconsideration denied June 23, 2005.