**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

KEVIN HARRIS,

               Appellant,

     v.

CB SOLUTIONS, LLC and DANIEL
ALLEN,

             Respondents.

No. 86816-1-I

DIVISION ONE

UNPUBLISHED OPINION

MANN, J. — Kevin Harris appeals the trial court's summary dismissal of his claims against his former employer, CB Solutions, LLC, and its manager, Daniel Allen. Harris also challenges the trial court's order denying his motion for reconsideration. We affirm.

I

Harris sued CB Solutions and Allen (the defendants) for wrongful termination in June 2022. According to Harris's amended complaint, CB Solutions hired Harris as a warehouse operations specialist in June 2018. Harris alleged that on August 18, 2021, in response to the COVID-19 pandemic, CB Solutions "announced to all of its employees . . . that it would require all employees to be fully vaccinated against [COVID-19], in order to be allowed access to [CB Solutions'] office facility." Harris alleged that on September 3, 2021, after he declined to be vaccinated, CB Solutions wrongfully terminated his employment.

In February 2024, Harris moved for partial summary judgment, arguing that he was entitled to judgment as a matter of law on certain of his claims. The defendants opposed Harris's motion and cross-moved for summary dismissal of all of Harris's claims. The trial court denied Harris's motion, granted the defendants' cross-motion, and entered judgment in CB Solutions' favor. Harris moved for reconsideration, which the trial court denied. Harris appeals.

II

Harris argues that the trial court erred by summarily dismissing his claims against the defendants. We disagree.

A

"We review a trial court's grant of summary judgment de novo." Litvack v. Univ. of Wash., 30 Wn. App. 2d 825, 842, 546 P.3d 1068 (2024). "Summary judgment is properly granted when the pleadings, affidavits, depositions, and admissions on file demonstrate there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Litvack, 30 Wn. App. 2d at 842 (citing CR 56(c)).[1] "We consider all facts and reasonable inferences in the light most favorable to the nonmoving party," Litvack, 30 Wn. App. 2d at 842, but "[a]ffidavits containing conclusory statements without adequate factual support are insufficient to defeat a motion for summary judgment." Guile v. Ballard Cmty. Hosp., 70 Wn. App. 18, 25, 851 P.2d 689 (1993). Additionally, while we may affirm a summary judgment order on any basis supported by the record, Anderson v. Grant County, 28 Wn. App. 2d 796, 803, 539 P.3d

---

[1] Harris relies on the standards for dismissal under the federal counterpart to CR 12(b)(6). Those standards do not apply here because the trial court dismissed Harris's claims under CR 56, not CR 12(b)(6).

40 (2023), we "will consider only evidence and issues called to the attention of the trial court." RAP 9.12.

B

In support of reversal, Harris contends that CB Solutions was not authorized by any of the following to make vaccination a condition of his employment—and, consequently, to terminate him for not getting vaccinated: (1) the Public Readiness and Emergency Preparedness (PREP) Act, 42 U.S.C. §§ 247d-6d to -6e, (2) the Federal Food Drug, and Cosmetic Act (FDCA), 21 U.S.C. §§ 301-399i, (3) the Occupational Safety and Health Act of 1970 (OSHA), 29 U.S.C. §§ 651-678, (4) the Washington Industrial Safety and Health Act of 1973 (WISHA), chapter 49.17 RCW, or (5) any of then-governor Jay Inslee's emergency proclamations regarding COVID-19.

But as Harris acknowledges, Washington is an at-will employment state, meaning that as a general matter, "[a]n employer may discharge an . . . employee for 'no cause, good cause or even cause morally wrong without fear of liability.' " Roe v. TeleTech Cust. Care Mgmt. (Colo.) LLC, 171 Wn.2d 736, 754-55, 257 P.3d 586 (2011) (quoting Thompson v. St. Regis Paper Co., 102 Wn.2d 219, 226, 685 P.2d 1081 (1984)). Accordingly, CB Solutions did not need separate authority under any of the foregoing statutes or proclamations to terminate Harris's employment when he declined to comply with its vaccine policy.[2]

---

[2] Harris relies largely on federal cases to support a number of his assertions to the contrary. For example, he cites Health Freedom Defense Fund, Inc. v. Carvalho, 104 F.4th 715 (9th Cir. 2024), for the proposition that CB Solutions did not have authority to implement a vaccine policy. But the federal cases Harris cites are not binding on this court. See Delex Inc. v. Sukhoi Civ. Aircraft Co., 193 Wn. App. 464, 473, 372 P.3d 797 (2016) (lower federal court decisions are merely persuasive authority in this court). In any case, Carvalho has been vacated pending an en banc rehearing, 127 F.4th 750 (9th Cir. 2025), and the only claims at issue therein were substantive due process and equal protection claims against the Los Angeles Unified School District, i.e., a government employer. 104 F.4th at 718, 720. Absent certain

Harris disagrees and argues that CB Solutions wrongfully terminated him in violation of public policy. "One narrow exception to the general at-will employment rule prohibits an employer from discharging an employee 'when the termination would frustrate a clear manifestation of public policy.' " Roe, 171 Wn.2d at 755 (quoting Ford v. Trendwest Resorts, Inc., 146 Wn.2d 146, 153, 43 P.3d 1223 (2002)). But Harris did not articulate this argument to the trial court at summary judgment, and even in his briefing on appeal, he fails to analyze the elements of a termination-in-violation-of-public-policy claim. Cf. Roe, 171 Wn.2d at 756 (plaintiff alleging termination in violation of public policy must prove (1) the existence of a clear public policy, (2) that discouraging the conduct in which they engaged would jeopardize the public policy, (3) that the public-policy-linked conduct caused the dismissal, and (4) that the defendant lacks an overriding justification for the dismissal). We decline to consider this claim for the first time on appeal. See RAP 2.5(a) ("The appellate court may refuse to review any claim of error which was not raised in the trial court."); see also Evans v. Firl, 25 Wn. App. 2d 534, 544 n.3, 523 P.3d 869 (2023) ("We will not consider issues that are not adequately briefed and argued, even if they are included as assignments of error.").

Harris next asserts that "the choice to accept a vaccine is normally a 'private, irreversible medical decision made in consultation with private medical professionals outside the federal workplace,' and, therefore, a vaccine mandate cannot be made a 'working condition' of employment," quoting the Fifth Circuit's decision in Feds for

_____

exceptions, which Harris does not address, a plaintiff may not assert constitutional violations against private actors like the defendants. See Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922, 102 S. Ct. 2744, 73 L. Ed. 2d 482 (1982) ("Our cases have . . . insisted that the conduct allegedly causing the deprivation of a federal right be fairly attributable to the State.").

-4-

Medical Freedom v. Biden, 63 F.4th 366, 376 (5th Cir.), vacated on other grounds, ___ U.S. ___, 144 S. Ct. 480, 217 L. Ed. 2d 248 (2023). But the Fifth Circuit did not hold that employers cannot require vaccines as a working condition of employment—instead, it held only that a vaccine mandate is not a "working condition" as contemplated by the Civil Service Reform Act of 1978[3] such that federal courts lack jurisdiction over pre-enforcement challenges brought by federal employees. See Feds for Medical Freedom, 63 F.4th at 369-70. Harris's reliance on Feds for Medical Freedom is misplaced.

Harris's reliance on section 564 of the FDCA, codified at 21 U.S.C. § 360bbb-3, is similarly misplaced. That statute governs emergency use authorization (EUA) for medical products that have not received full approval. See 21 U.S.C. § 360bbb-3(a)(1)-(2). According to Harris, section 564 required CB Solutions to give him certain information and to obtain his informed consent. He asserts that CB Solutions failed to comply with section 564 and that he "had the right to refuse the 'voluntary' participation in the [COVID-19] vaccination program without retaliatory and adverse consequences due to exercising his right to Informed Consent."

Section 564 of the FDCA directs the "Secretary" to establish EUA conditions "designed to ensure that individuals to whom the product is administered are informed . . . of the option to accept or refuse administration of the product, of the consequences, if any, of refusing administration of the product, and of the alternatives to the product that are available and of their benefits and risks." 21 U.S.C. § 360bbb-3(e)(1)(A)(ii)(III). The "Secretary" means the Secretary of Health and Human Services. See 21 U.S.C. § 321(d) (defining the term "Secretary"). As multiple federal courts have

---

[3] Civil Service Reform Act of 1978, Pub. L. No. 95-454, 92 Stat. 1111.

explained, section 564's informed consent provision does not apply to an employer like CB Solutions "when the employer is not 'directly administering the vaccine.' " Henson v. PeaceHealth Peace Harbor Med. Ctr., No. 6:23-cv-01101-MK, 2023 WL 9101959, at *3 (D. Or. Oct. 25, 2023) (court order) (quoting Burcham v. City of Los Angeles, 562 F. Supp. 3d 694, 708 (C.D. Cal. 2022)); see also Klaassen v. Trs. of Ind. Univ., 549 F. Supp. 3d 836, 870 (N.D. Ind. 2021) (informed consent requirement applies only to medical providers), vacated on other grounds, 24 F.4th 638 (7th Cir. 2022); Valdez v. Grisham, 559 F. Supp. 3d 1161, 1172 (D.N.M. 2021) (informed consent requirement does not apply to those not directly administering the vaccine).

C

Harris next argues that CB Solutions violated Title VII of the Civil Rights Act of 1964, 17 U.S.C. § 2000e (Title VII), and the Washington Law Against Discrimination (WLAD), chapter 49.60 RCW, because it failed to reasonably accommodate his religious beliefs by granting him a religious exemption to its vaccination policy. But as CB Solutions pointed out at summary judgment, Title VII applies only to employers with 15 or more employees, see 42 U.S.C. § 2000e(b), and Harris did not dispute that CB Solutions had only 12 employees.

As for the WLAD, a plaintiff claiming failure to accommodate religious practices must show "that (1) he or she had a bona fide religious belief, the practice of which conflicted with employment duties; (2) he or she informed the employer of the beliefs and the conflict; and (3) the employer responded by subjecting the employee to threatened or actual discriminatory treatment." Kumar v. Gate Gourmet Inc., 180 Wn.2d 481, 501, 325 P.3d 193 (2014) (emphasis added).

Here, in support of its motion for summary judgment, CB Solutions submitted Harris's interrogatory responses stating that he did not request a religious exemption from the vaccine policy. Additionally, Allen declared that "[b]ased on correspondence and conversations with [Harris], I understood that his objection to taking the COVID-19 vaccination was based on concerns about the vaccine's approval status, effectiveness against the virus, and potential to alter one's DNA," and that "[w]hen [Harris] was terminated, I was not aware of any . . . sincerely held religious belief that would prevent [Harris] from receiving a COVID-19 vaccine." Meanwhile, Harris did not present any admissible evidence to create a genuine issue of material fact about whether he informed CB Solutions of his religious beliefs and their conflict with the vaccination policy. Indeed, it was not until Harris moved for reconsideration that he addressed the matter, and even then, Harris admitted that he "was not given a chance to articulate [his] religious beliefs," that he "articulated [his] concerns for safety arising from [his] religious beliefs as best [he] could," and that at a September 2, 2021 meeting with his supervisor and Allen, he asked, "I thought you were required to offer religious and medical exemptions?" At best, Harris showed only that his objections to the vaccine policy were <u>motivated</u> by his religious beliefs. But he failed to allege specific facts showing that he <u>informed</u> CB Solutions of those beliefs and their conflict with the policy. The trial court did not err by dismissing Harris's WLAD-based religious accommodation claim.

III

Harris also asserts that the trial court erred by denying his motion for reconsideration. Again, we disagree.

We review the denial of a motion for reconsideration for an abuse of discretion. Dynamic Res., Inc. v. Dep't of Revenue, 21 Wn. App. 2d 814, 824, 508 P.3d 680 (2022). "A trial court abuses its discretion if its decision is 'manifestly unreasonable or exercised on untenable grounds or for untenable reasons.' " Dynamic Res., 21 Wn. App. 2d at 824 (quoting McCoy v. Kent Nursery, Inc., 163 Wn. App. 744, 758, 260 P.3d 967 (2011)).

Harris argued in his motion for reconsideration that he was entitled to a religious exemption, but as discussed above, Harris did not raise a genuine issue of material fact as to whether he informed CB Solutions of his religious beliefs and the conflict with its vaccine policy prior to his termination.[4] Harris also argued on reconsideration that CB Solutions was equitably estopped from arguing that Harris was required to inform it of his religious objections to vaccination. But Harris did not raise equitable estoppel until his reply in support of reconsideration, and the trial court was well within its discretion to reject this untimely raised legal theory. See Wilcox v. Lexington Eye Inst., 130 Wn. App. 234, 241, 122 P.3d 729 (2005) (CR 59 does not permit a plaintiff to propose new legal theories that could have been raised before entry of an adverse decision); cf. Park Place Motors, Ltd. v. Elite Cornerstone Constr., LLC, 18 Wn. App. 2d 748, 754, 493 P.3d 136 (2021) (party waived argument that it did not raise until its reply brief in support of reconsideration). Harris does not show that the trial court abused its discretion by denying reconsideration.

_____

[4] Harris relies on Ringhofer v. Mayo Clinic, Ambulance, 102 F.4th 894 (8th Cir. 2024), to support his claim that he was entitled to a religious exemption. Ringhofer was an appeal from a dismissal under Fed. R. Civ. P. 12(b)(6), and thus, the issue before the court was the adequacy of the plaintiffs' complaint. See 102 F.4th at 898, 900. As discussed, supra note 1, Harris's complaint was dismissed under CR 56, not CR 12(b)(6). Accordingly, Ringhofer, which in any event is nonbinding, is also inapposite.

IV

As a final matter, Harris argues that the trial court erred by dismissing his claims against Allen. This is so, Harris asserts, because Allen "was a 'Covered Person' entity pursuant to the PREP Act," and thus, the PREP Act did not immunize Allen from suit.

But Allen attested at summary judgment that he acted at all relevant times in his capacity as the manager of CB Solutions, a limited liability company (LLC) and the entity that employed—then terminated—Harris. Harris does not point to any evidence in the record to the contrary, and he does not explain why personal liability should attach to Allen. Cf. Dickens v. All. Analytical Labr'ys., LLC, 127 Wn. App. 433, 440, 111 P.3d 889 (2005) (an LLC must act through its members or managers; to reach them personally, an employee must show that the LLC form was intentionally used to violate or evade a duty and that disregarding the veil is necessary and required to prevent an unjustified loss to the employee). Accordingly, even assuming without deciding that the PREP Act did not immunize Allen from Harris's lawsuit, Harris fails to show that Allen's dismissal from that lawsuit was improper.

We affirm.

_____Mann, J._____

WE CONCUR:

_____, ACJ    _____J.